(158 App. Div. 5.)

### NEPONSET NAT. BANK v. DUNBAR et al.

(Supreme Court, Appellate Division, Fourth Department.  July 8, 1913.)

1. BILLS AND NOTES (§ 49*)—ACCOMMODATION NOTES—LIABILITY OF MAKER.

The maker of an accommodation note is not liable thereon, when in the hands of the one for whose accommodation it was made.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 66; Dec. Dig. § 49.*]

2. BILLS AND NOTES (§ 518*)—ACCOMMODATION NOTE—PERSON ACCOMMODATED —EVIDENCE.

Evidence in an action on a note *held* not to show it was made for the accommodation of plaintiff bank, but to show it was made for the personal accommodation of its president.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1816–1820;  Dec. Dig. § 518.*]

3. EVIDENCE (§ 471*)—OPINIONS.

Witnesses may not testify to their "understanding" of agreements, without giving the basis therefor, or give explanation of the meaning of letters written by them, thus usurping the province of the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471;*  Witnesses, Cent. Dig. §§ 833, 834.]

Appeal from Trial Term, Erie County.

Action by the Neponset National Bank against Harris T. Dunbar and another, as executors of Charles F. Dunbar, deceased. From a judgment for defendants, on a special verdict, and from an order awarding a special allowance of costs to defendants, and from an order denying a motion for new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

John W. Ryan, of Buffalo, for appellant.

F. C. Slee, of Buffalo, for respondents.

LAMBERT, J.  This action is brought to recover the principal and interest upon two certain promissory notes, made by Charles F. Dunbar, respondents' testator, to his own order, and which are now held by the appellant. It is conceded that deceased made these notes, and that the amount sought to be recovered thereon has never been paid.

[1] The single defense litigated, and upon which respondents have succeeded, is that these notes were made by deceased for the accommodation of the appellant, and that hence, in the hands of such bank, no liability can be predicated thereon. The sufficiency, in law, of such a defense cannot be doubted. Higgins v. Ridgway, 153 N. Y. 132, 47 N. E. 32. Hence it only remains to examine the facts to ascertain, whether such defense is established.

[2] At all the times here involved Charles H. French was the president of the plaintiff bank. He was a cousin of the deceased, Charles F. Dunbar. Deceased resided at Buffalo, and was a man of some considerable means. A majority of the directors of the plaintiff bank were also relatives. In January, 1903, through correspondence, French

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

appealed to deceased for financial assistance. Dunbar was then engaged in the erection, at Buffalo, of a foundry, and his letters indicated that he himself was a heavy borrower in connection with such enterprise. These negotiations finally resulted in the making of the notes in suit, executed and indorsed by deceased, and sent by him to French. These notes were sold to the appellant, and have ever since been held by it. Prior to the making of these notes, various of the officers of the bank, including the president, French, had become interested in the Argonaut Mining & Milling Company, of Nova Scotia, and the bank then held a long line of discounts growing out of this mining project, and which had come to it from various of the interested parties. The proceeds of these Dunbar notes were placed to the credit of the mining company and applied to its purposes.

It is practically undisputed but that this transaction was purely one of accommodation, so far as Dunbar was concerned. He never received any benefit from it, nor was it expected that he should. The appellant contends that the accommodation was extended to, and was intended to be extended to, French personally, and not to the bank. Upon the examination of that question we must go to the circumstances surrounding the original transaction, to determine the intention of French and of Dunbar in adopting the course which they pursued.

There are in evidence letters from French and Dunbar asking the making of these notes for the personal accommodation of French, and nowhere therein is there to be found any intimation that the bank was asking any accommodation. The appeals for assistance are pressing and personal in their tenor, and clearly relate to French himself. The purpose of the accommodation is not disclosed therein, and it is only by tracing the proceeds of the notes that they become involved in the mining matter at all. Therein French explicitly states his purpose of placing the notes in this bank. He mentions the willingness of the bank to accept them, made due six months from their date, and refers to the fact that he has secured in advance the consent of the bank to accept deceased's note or notes for the specified sum without an indorser. These communications are profuse in their declarations and promises that the writer will pay these obligations at maturity, and are replete with expressions of gratitude upon the part of French for the great accommodation to him. This side of the transaction furnishes no room for the assumption that the bank was the party to be accommodated by the making of these notes.

Turning, then, to the letters written by deceased, we find still stronger evidence that this was a personal matter between these cousins. From such it is plain that deceased understood that these notes were made for the express purpose of being sold to the plaintiff bank, and his recognition of his liability thereon seems complete, when he writes of arranging to carry the loan at Buffalo "until such time as the note can be discounted," and of taking care of the notes when due, if French is unable to pay them.

It is thus seen that these written negotiations are devoid of proof even tending to sustain the finding evidenced by the verdict and judgment. Nor is their import changed, when read in the light of the

events which followed. There is much evidence relating to the relations of the bank with the mining company, and evidence of a character that might be corroborative of proof that the bank procured these notes for its accommodation, if this latter proof was in the case. But in its absence there is no fact proven that is not as fully consonant with the contention that these notes were given for French's individual accommodation as that they were given for the benefit of the bank.

It is true that the mine was controlled by individuals constituting a majority of the board of directors of the bank. But that fact does not even tend to support respondents' contention. The bank and the mining company were two separate legal entities, and the fact that the same individuals were officers of each cannot militate against other persons interested in either, but not so situated. —

It is equally true that respondents were compelled to seek their proof largely from the officers of the appellant. But that situation cannot dispense with the necessity of some proof sustaining the defense urged. No such proof is presented by the record, and, on the other hand, the proof adduced is directly to the contrary, and to the effect that these notes were made for French's accommodation, and were purchased by the appellant for value.

[3] There are various exceptions urged to the admission of evidence, which seem to have merit. Witnesses were permitted to testify to their "understanding" of certain agreements and negotiations, without giving the basis from which they derived such understanding, thus usurping the province of the jury. A witness was also asked, upon direct examination, to furnish his explanation of the meaning of letters written by him, when such construction thereof is always a question for a jury, if the main inquiry reaches a jury.

However, the judgment and orders appealed from must be reversed, because of the failure of essential proof to sustain the verdict upon which the same are premised, and, as such errors likely will not occur upon a retrial, it is needless to discuss them further. And, as it may be possible to adduce proof in support of the defense urged, a new trial should be ordered, with costs to the appellant to abide the event. All concur.